Case 8:21-cv-01629-SSS-KES   Document 1-1   Filed 10/04/21   Page 1 of 28   Page ID #:4
Electronically Filed by Superior Court of California, County of Orange, 12/31/2020 08:16:52 PM.
30-2020-01176914-CU-WM-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Skeeter Berry, Deputy Clerk.

1  *CAZZELL & ASSOCIATES, ATTORNEYS*
   *MARYANN CAZZELL, ESQ.* (Bar #128780)
2  505 N. Tustin Ave., Ste. 276
   Santa Ana, California 92705
3  Telephone: 714/558-1772
   Telefax: 714/558-1883
4  cazzell@msn.com

5  Attorneys for Petitioner/Plaintiff AMERICAN
   GROUND TRANSPORTATION, INC., a California
6  Corporation, doing business as 24/7 Taxi Cab

7

8         *SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF ORANGE*

9               *CENTRAL DISTRICT CENTER, UNLIMITED*

10

11  AMERICAN GROUND TRANSPORTATION,     )  CASE NO.:  30-2020-01176914-CU-WM-CJC
    INC., A California Corporation, doing business )
12  as 24/7 Taxi Cab,                   )
                                        )
13                                      )  **PETITION FOR WRIT OF**
                    Petitioner and      )  **ADMINISTRATIVE**
14                  Plaintiff,          )  **MANDATE, TRADITIONAL**
                                        )  **MANDATE, OR OTHER WRIT;**
15                                      )  **COMPLAINT FOR**
    vs.                                 )  **DECLARATORY RELIEF AND**
16                                      )  **FOR DAMAGES PURSUANT**
                                        )  **TO 42 *U.S.C.* SECTION 1983 *et***
17  THE CITY OF ANAHEIM; MAYOR HARRY    )  ***seq.*; REQUEST FOR A TRIAL**
    S. SIDHU; MAYOR *PRO TEM* STEPHEN   )  **BY JURY FOR ALL MATTERS**
18  FAESSEL; COUNCILPERSON DENISE       )  **ON WHICH A JURY TRIAL IS**
    BARNES; COUNCILPERSON JORDAN        )  **AVAILABLE**
19  BRANDMAN; COUNCILPERSON JOSE F.     )
    MORENO; COUNCILPERSON LUCILLE       )  (RELATED TO ORANGE
20  KRING; COUNCILPERSON TREVOR         )  COUNTY SUPERIOR COURT
    O'NEIL; SANDRA SAGERT, COMMUNITY    )  CASE #30-2013-00688977-CU-
21  PRESERVATION AND LICENSING          )  MC-CJC)
    MANAGER; and DOES 1 THROUGH 100,    )
22  Inclusive,                          )
                                        )
23                                      )  Assigned for All Purposes
                    Respondents and     )  Judge Stephanie George
24                  Defendants.         )
                                        )
25                                      )
                                        )
26                                      )
                                        )
27                                      )
                                        )
28  _____    )

TO THIS HONORABLE COURT, TO DEFENDANTS THE CITY OF ANAHEIM ("ANAHEIM;") MAYOR HARRY S. SIDHU; MAYOR *PRO TEM* STEPHEN FAESSEL; COUNCILPERSON DENISE BARNES; COUNCILPERSON JORDAN BRANDMAN; COUNCILPERSON JOSE F. MORENO; COUNCILPERSON LUCILLE KRING; COUNCILPERSON TREVOR O'NEIL; AND SANDRA SAGERT, COMMUNITY PRESERVATION AND LICENSING MANAGER; AND TO MOSES W. JOHNSON, IV., ASSISTANT CITY ATTORNEY, OR OTHER COUNSEL FOR SAID DEFENDANTS; AND TO ALL OTHER INTERESTED PARTIES AND THEIR COUNSEL:

COMES NOW PLAINTIFF AMERICAN GROUND TRANSPORTATION, INC., A California Corporation, doing business as 24/7 Taxi Cab and does hereby seek by this PETITION the issuance of a WRIT, and damages and equitable relief pursuant to its COMPLAINT, as follows:

COMMON FACTS:

1. At all times relevant (except as otherwise specifically stated,) Plaintiff AMERICAN GROUND TRANSPORTATION, INC., A California Corporation, doing business as 24/7 Taxi Cab (hereinafter "AGT") was and is a corporation, duly licensed and existing under the laws of the State of California, operating in relevant part as a taxicab company, with its principal place of business in the City of Orange, County of Orange, and within the geographical boundaries of this Court.

2. At all times hereinmentioned Respondent/Defendant THE CITY OF ANAHEIM ("ANAHEIM") was and is organized as a "Charter City" authorized by the State of California and operating within the guidelines of the County of Orange, pursuant to its CHARTER and the ANAHEIM MUNICIPAL CODE ("*AMC*") it enacted (and which it has and does from time to time amend pursuant to Resolutions carried by the

1   ANAHEIM City Council and its enactment of municipal Ordinances.)  AGT is informed

2   and believes and based thereon alleges that at all times hereinmentioned, despite

3   operating as a "Charter City," ANAHEIM is still subject to the laws of the State of

4   California on matters of "statewide concern."

5

6            3.  Respondents/Defendants ANAHEIM MAYOR HARRY S. SIDHU;

7   MAYOR *PRO TEM* STEPHEN  FAESSEL; COUNCILPERSON DENISE BARNES;

8   COUNCILPERSON JORDAN BRANDMAN; COUNCILPERSON JOSE F. MORENO;

9   COUNCILPERSON LUCILLE KRING; COUNCILPERSON TREVOR O'NEIL

10  (collectively, the "COUNCILPERSONS") were those City Councilpersons who were

11  present and sitting in their official capacities at the ANAHEIM City Council meetings

12  related to the award of taxicab franchise described hereinbelow.  Respondent/Defendant

13  SANDRA SAGERT at all relevant times acted as ANAHEIM's COMMUNITY

14  PRESERVATION AND LICENSING MANAGER and was integrally involved in the

15  acts or omissions alleged hereinbelow.  Along with ANAHEIM, the

16  COUNCILPERSONS and SANDRA SAGERT are sometimes hereafter collectively

17  described as the "ANAHEIM RESPONDENTS" or the "ANAHEIM DEFENDANTS."

18

19           4.  AGT is unaware of the exact names and capacities of those Respondents

20  or Defendants named herein as "DOES 1 THROUGH 100" and therefore sues these

21  Respondents/Defendants by such fictitious names.  AGT will seek leave to amend this

22  PETITION/COMPLAINT to add the names and capacities of the fictitiously-named

23  Defendants once same have been ascertained.  AGT is informed and believes and based

24  thereon alleges that each of these fictitiously-named Respondents/Defendants was or is in

25  some manner responsible for the acts and omissions of the ANAHEIM RESPONDENTS

26  and ANAHEIM DEFENDANTS alleged herein, and that the injury and damage resulting

27  to AGT as alleged herein were proximately caused by their conduct.  AGT is further

28

1   informed and believes and based thereon alleges that, unless the context of the allegations

2   would otherwise dictate, at all times hereinmentioned each of these fictitiously-named

3   Defendants was acting as the agent, representative, or employee of the ANAHEIM

4   RESPONDENTS and ANAHEIM DEFENDANTS, and within the scope of each said

5   Respondent/Defendant's agency, representation, or employment with them, and that the

6   ANAHEIM RESPONDENTS/ANAHEIM RESPONDENTS consented to, ratified, or

7   adopted such acts and omissions.

8

9          5.  The amount in controversy exceeds the sum of $25,000.

10

11         6..  This Petition/Complaint is related to Orange County Superior Court

12  ("OCSC") case #30-2013-00688977-CU-MC-CJC, filed November 21, 2013 (the

13  "Related Case,") which is still pending before this Court following the February 14, 2020

14  Remittitur issued by the Court of Appeal for the Fourth District of California, Third

15  Division in Appellate Case #G055501.  This Petition/Complaint is presented and filed

16  under a separate case number per the direction of the Court in the Related Case, since its

17  genesis was the review of Defendants' actions taken with respect to a REQUEST FOR

18  PROPOSAL for the award of ANAHEIM taxicab franchises ("RFP") issued by

19  Defendants on or about July 15, 2020, reviewed and scored and ultimately awarded as

20  explained hereinbelow, on October 6, 2020.  This Petition/Complaint is not intended to

21  supersede the allegations of the Related Case, but rather *only* to supplement and update

22  those allegations with the more recent proceedings.  *The pleadings and files in the*

23  *Related Case are intended to be incorporated into this matter and made a part hereof.*

24  AGT intends the matters now before the Court in the Related Case to so remain, and does

25  not intend that any of the allegations herein are to supplant the jurisdiction of the Court in

26  the Related Case to determine the issues now before it, or which may reasonably be

27  considered within its ambit or by extension, or which may come before it in the future.

28  The allegations of the paragraphs contained in the FOURTH CAUSE OF ACTION are

1   presented without intending to take away from the generality of the allegations of this

2   paragraph, or in any way meaning to contradict them, but merely to provide background

3   information that may be helpful to this Court.

4

5                               FIRST CAUSE OF ACTION

6                             FOR ISSUANCE OF A WRIT OF

7                             ADMINISTRATIVE MANDATE

8                          AS AGAINST ALL RESPONDENTS.

9

10          7.  AGT repeats and realleges each allegations of the COMMON FACTS as

11  though set forth at length hereat.

12

13          8.  In the Related Case proceedings that took place prior to the Appeal in

14  Appellate case #G055501 (and as explained in more detail in the FOURTH CAUSE OF

15  ACTION below,) the OCSC, the Hon. Judge Mary Fingal Schulte (now retired)

16  presiding, held a bench "First Writ Trial" on April 29, 2016.  In relevant part, at issue was

17  whether or not ANAHEIM had complied with its own laws in the manner in which it

18  conducted its August 8, 2012 "Rehearing" of the taxicab franchise awards made on or

19  about May 8, 2012 - specifically, the fifty (50) taxicab franchise awarded to A WHITE

20  AND YELLOW CAB, INC. ("AWYC.")  The Trial Court found at that time that

21  ANAHEIM had *not* complied with its own laws in the conduct of its August 21, 2012

22  "Rehearing," and entered its Minute Order on June 20, 2016 ("MINUTE ORDER,")

23  directing that ANAHEIM conduct a new "Rehearing" for those 50 permits.  ANAHEIM

24  had already been on notice as of about April 5, 2016, that AWYC had generally ceased its

25  taxicab operations on or about April 4, 2016, but ANAHEIM took no action for at least

26  four months thereafter (that would have assisted AGT) to terminate AWYC's franchise.

27  In particular, because one of the three taxicab franchises had been terminated, under its

28  own Anaheim Municipal Code ("*AMC*") ANAHEIM was required to take immediate

1   action to terminate AWYC's franchise, and to begin the long, detailed process of creating
2   and issuing an entirely new RFP for the award of those 50 permits.  Instead of acting in
3   compliance with that law, ANAHEIM let the matter drag on until AGT protested; and
4   during those months AGT is informed and believes and based thereon alleges that
5   ANAHEIM allowed the two existing favored taxicab franchisees, YELLOW CAB OF
6   GREATER ORANGE COUNTY ("YELLOW CAB") and CABCO, INC., dba
7   CALIFORNIA YELLOW CAB ("CABCO") to simply (and behind the scenes) divide up
8   AWYC's 50 franchise permits between them and add them to their own fleets (25 each.)
9   ANAHEIM did this without taking any official action to allow for the same, even though
10  ANAHEIM was well aware that the matter of AWYC's 50 permits was expressly under
11  the jurisdiction of the OCSC in general, and under the MINUTE ORDER in particular.
12  Then when ANAHEIM began purporting to comply with the MINUTE ORDER, rather
13  than finally initiating an entirely new RFP as required, it instead conducted the cursory
14  "Rehearing" *that would only have complied with the gist of the MINUTE ORDER, if*
15  *AWYC had still been in business and using those 50 permits*, which was not the case.
16
17       9.  At or about this point AGT's current counsel substituted into the case as
18  its counsel of record, and began challenging ANAHEIM's lack of compliance with the
19  MINUTE ORDER.  Ultimately the Trial Court allowed AGT to file a Supplemental
20  Complaint to update to include the new procedural events, and a Second Writ Trial on
21  this and some related points was held in or about July 2017.  Thereafter the Trial Court
22  denied AGT any relief by way of this pleading, finding that ANAHEIM had complied
23  with the MINUTE ORDER, and dismissing the action.  AGT Appealed, in relevant part
24  requesting review of the propriety of the Trial Court's determination in the Related Case
25  that ANAHEIM acted legally in finding in July 2017, that ANAHEIM had properly
26  conducted the  "Rehearing" ordered by the Trial Court in its MINUTE ORDER.
27  ///
28  ///

10.  In its October 31, 2019 OPINION in Case #G055501 ("COA ORDER,") the COA found that ANAHEIM had *not* acted pursuant to law in the conduct of its Rehearing.  On that basis it *reversed* the Dismissal of the Seventh Cause of Action set forth in the Supplemental Complaint filed in the Related Case, *vacated* the ANAHEIM City Council's award of 25 permits to YELLOW CAB and 25 permits to CABCO, and *ordered* ANAHEIM to issue an RFP for "those 50 taxicab permits" (that had previously been held by AWYC.)  The COA ORDER became final on February 14, 2020 (the date of the issuance of the Remittitur) at the latest.  However, ANAHEIM did not comply with the COA ORDER thereafter; and in fact, the ANAHEIM RESPONDENTS have not done so to this day, in at least two respects:

(1)  ANAHEIM never vacated the City Council's award of 25 permits to YELLOW CAB *nor* to CABCO.  Instead, YELLOW CAB held onto them (in addition to its other 155 permits, 25 of which it had secured illegally in the year 2008 (*see* para. 43 *infra*),) until it went out of business in May of 2020 (whereupon CABCO began taking over YELLOW CAB's fleet and ANAHEIM franchise permits without lawful procedure;) and CABCO never surrendered its wrongfully-awarded 25 AWYC permits at all, but just kept them affixed to taxicabs that were already a part of its fleet, and operated them to pick up fares in ANAHEIM; and

(2)  ANAHEIM failed and refused, despite continual demand being made by AGT in the Post-appellate OCSC proceedings, to issue a *separate* RFP for "those 50 permits" as ordered in the COA ORDER, and then to issue a second RFP for the newly-available YELLOW CAB 150 ANAHEIM taxicab franchise permits, which would be bid on separately and *after* the RFP bid and award for those 50 taxicab permits, as required by the *AMC*.

11.  During post-Remittitur proceedings in the Related Case that took place in or about June 2020, the OCSC (the Honorable GLENN SALTER presiding) directed ANAHEIM to issue an RFP for those 50 taxicab permits in accordance with the COA

ORDER. ANAHEIM had not done so as of that time; and to AGT's knowledge, has not done so to this day. Instead, ANAHEIM again delayed processing one of its taxicab franchisees' surrender of its taxicab franchises (this time, YELLOW CAB's, the taxi company that held one hundred eighty (180) permits, 25 of which should have already been vacated and returned to the ANAHEIM RESPONDENTS as a sort of "treasury stock" franchise permits in order to have complied with the COA ORDER.) In the meanwhile ANAHEIM allowed the only then-remaining ANAHEIM taxicab franchisee (CABCO) not only to continue to use its 25 permits that had been "vacated" by the COA ORDER since at least February 14, 2020, but also to secretly and illegally begin using many of YELLOW CAB's ANAHEIM taxicab permits (including its 25 "vacated" permits,) *again*, without having gone through the RFP public bidding process required under *AMC* 4.73.050. When faced with responding to the OCSC's Tentative Ruling that it might issue an Order to Show Cause directed to ANAHEIM as to why it had not issued an RFP for those 50 taxicab permits in compliance of the COA ORDER, rather than actually issuing such an RFP, ANAHEIM combined and commingled those 50 permits with the newly-available 155-180 YELLOW CAB permits. Then, over AGT's objections, rather than complying with the COA ORDER to issue an RFP for "those 50 permits" (which had previously belonged to AWYC,) *and later issued a second RFP for the 155 YELLOW CAB permits as required by the AMC*, on or about July 15, 2020 ANAHEIM issued only a *single RFP, for all two hundred five (205) franchise permits, at once,* without any reference to which of the permits were those that had belonged to AWYC, and which were those that had belonged to YELLOW CAB.

12. On August 14, 2020 AGT timely submitted a fully-responsive and compliant RFP Application, seeking an award of one hundred (100) of the available franchise permits (presumably, "those 50 permits" as delineated in the COA ORDER, and 50 of the newly-available 155 permits that had come from YELLOW CAB.) The only other applicant was CABCO, that already "legally" held 50 permits (although it was

1    already using 25 of the 205 up for bid.)  CABCO nonetheless submitted its RFP

2    Application for the entirety of the available 205 permits.  At a City Council hearing held

3    before the ANAHEIM RESPONDENTS on September 15, 2020, without much comment

4    other than to note that the award Recommendation was made by the TAXICAB

5    ADVISORY COMMITTEE ("TAC") to award CABCO 155 permits, and AGT, 50,) the

6    ANAHEIM RESPONDENTS did award 155 of the available 205 permits (presumably *all*

7    of YELLOW CAB's permits) to CABCO, and the remaining 50 permits, to AGT, even

8    though AGT held no ANAHEIM permits at that time.  This allowed CABCO to then hold

9    over eighty percent (80%+) of the ANAHEIM taxicab franchise permits; or two hundred

10   five (205) of the 255 franchise permits, to AGT's 50, creating a monopoly as explained

11   hereinbelow.

12

13         13.  A "second reading" of ANAHEIM's RFP awards was set to take place

14   on September 29, 2020.  Prior thereto, AGT timely submitted a REQUEST FOR

15   REHEARING of the franchise awards. The ANAHEIM RESPONDENTS thus continued

16   the Second Reading to October 6, 2020 and set AGT's REQUEST FOR REHEARING

17   for that same date.  Prior to the October 6, 2020 hearing, ANAHEIM Staff had placed the

18   REQUEST FOR REHEARING on the "Consent Calendar."  At the time of the hearing,

19   ANAHEIM denied the REQUEST FOR REHEARING in summary fashion, and the

20   second reading of the franchise awards took place.  The franchise ordinances (#6495

21   pertaining to CABCO, and #6496 pertaining to AGT) were signed on October 6, 2020.

22   The ANAHEIM RESPONDENTS' purposeful commingling of the YELLOW CAB

23   permits with "those 50 taxicab permits" (from AWYC,) without any segregation or

24   accounting for the 50 AWYC permits (the awards of which to YELLOW CAB and

25   CABCO had been "vacated" by the COA ORDER,) is apparent in the sixth RECITAL

26   (on page 1) of each of the ANAHEIM Ordinances 6495 and 6496 referenced above,

27   which is already before the Trial Court in the Related Case since ANAHEIM submitted it

28   by REQUEST FOR JUDICIAL NOTICE served on or about October 29, 2020: that

REQUEST was granted by the OCSC without objection from AGT. Each such RECITAL stated very generally that two franchisees (AWYC and YELLOW CAB) "went out of business" and that therefore their ANAHEIM franchise stickers were now the subject of the July 15, 2020 RFP public bid, *without noting that more than four (4+) years had passed between* the occurrences of those events, *and that in the interim*, subject to and as the result of much litigation, *the COA ORDER held that the award of AWYC's permits to YELLOW CAB and CABCO was illegal, and vacated* those awards. The RECITAL was purposefully and carefully crafted to obscure the fact that the ANAHEIM RESPONDENTS had allowed YELLOW CAB and CABCO to continue to use those "vacated" 50 AWYC taxicab permits long after the COA ORDER had become final, and to omit the fact that the RFP that lead up to these ORDINANCES, also was intended to cover those 50 taxicab permits, even though CABCO still had them in its possession and was using them to that day.

14.  This Petition/Complaint will be timely filed pursuant to *C.C.P.* section 1094.6(b) within ninety (90) days of the date that the decision of the ANAHEIM RESPONDENTS became final.

15.  In post-Appellate proceedings in the Related Case, the Court has determined that it should issue an actual Writ of Mandate in order to comply with the COA ORDER, and it asked the parties to submit [Proposed] Writs. AGT has submitted at least two different versions of the [Proposed] Writ of Mandate to the OCSC, and ANAHEIM has submitted at least one; and both sets of litigants have filed written Objections to each other's versions. Still, as of this date, due to the delays related to the COVID-19 pandemic, and the staff shortage in the OCSC Clerk's Office, as of the date of the submission of this Petition/Complaint, AGT is unaware of the entry of any of the [Proposed] Writs of Mandate, and of which "version" was signed by the Court

16.  The ANAHEIM RESPONDENTS' act in combining those 50 permits in with the unrelated RFP for the newly-available 155 YELLOW CAB permits (rather than issuing a single RFP for "those 50 permits," securing that result and allowing the prevailing company to begin operating forthwith,) was wrongful, not authorized at law, and purposefully done in order to avoid awarding more than an aggregate of 50 permits to AGT, all to AGT's damage and other harm in a nature and amount according to proof. Further, the ANAHEIM RESPONDENTS' use of this unauthorized procedure was intentional and purposeful, for the purpose of "diluting" the ultimate awards, so that the ANAHEIM RESPONDENTS could "throw a bone" of an award of 50 permits to AGT, while awarding the balance of 155 permits to CABCO, in addition to the seventy-five (75) CABCO already held.  The ANAHEIM RESPONDENTS did this because they knew that the Trial Court in post-appellate proceedings in the Related Case was monitoring ANAHEIM's actions in this regard, and that ANAHEIM would likely no longer be able to deny awarding AGT an award of "those fifty permits" without legal repercussions.  By granting AGT only 50 permits of the total 205 awarded, the ANAHEIM RESPONDENTS were still able to have its favored company CABCO maintain a taxicab monopoly (defined as more than 80% of the total market share,) all to AGT's damage in an amount and nature according to proof.  Had the ANAHEIM RESPONDENTS complied with the COA ORDER, ANAHEIM would have issued and conducted a separate RFP for "those 50 permits" first; and then, later, issued a *separate* RFP for the 155 permits that YELLOW CAB had more recently surrendered.  Had the ANAHEIM RESPONDENTS conducted the proceedings in accordance with law, AGT would have had the opportunity to have bid on "those 50 taxicab permits," and on information and belief, the ANAHEIM RESPONDENTS would either have awarded those 50 permits to AGT, or AGT would have had a clear claim to relief and damages. This is so because at that stage, when bidding on the balance of the other 50 franchise permits it was seeking, AGT would have been able to have submitted a RFP Application showing that it already had actual taxicab operating experience in ANAHEIM, and it

1  could have submitted documentation showing that residents and other persons in

2  ANAHEIM were happy with its taxicab services.  AGT would have been able to show

3  that it already had a certain number of taxis operating in a professional manner in

4  ANAHEIM (side-by-side with incumbent CABCO,) such that AGT would have been in a

5  more secure position to ask for an award of the final 50 permits for which it had applied.

6  Thus, the ANAHEIM RESPONDENTS' wrongful, illegal, and procedurally-improper

7  actions proximately resulted in AGT losing its bid for the second, fifty ANAHEIM

8  taxicab permits, and all of which instead resulted in ANAHEIM's creation of a new

9  taxicab monopoly in favor of CABCO, all to AGT's further damage in an amount and

10  nature according to proof.

11

12        17.  AGT further alleges that the acts and omissions undertaken by the

13  ANAHEIM RESPONDENTS as described herein, including but not limited to

14  manipulating its own procedures in violation of the *AMC* so as to fail, refuse, and prevent

15  the presentation of two separate and appropriate taxicab RFPs so that AGT would be

16  allowed only a total of 50 (rather than an aggregate of 100) taxicab franchise permits, thus

17  grossly diluting the value of those 50 awarded and allowing CABCO to hold a taxicab

18  monopoly, were undertaken pursuant to and as a result of ethnic and other biases and

19  prejudice that the ANAHEIM RESPONDENTS held against the Greek Roditis family,

20  and against both AGT and its predecessor taxicab company as described hereinbelow, and

21  in order to effectively exclude them from ANAHEIM's operations.  These biases and

22  prejudice were demonstrated through ANAHEIM RESPONDENTS' failure and refusal to

23  observe and to curtail CABCO's illegal and improper use of YELLOW CAB's

24  ANAHEIM franchise stickers and vehicles, in direct violation of the *AMC* and other law,

25  *despite AGT's motion-related papers filed in the Related Case, which included admissible*

26  *evidence of ANAHEIM's and CABCO's wrongful acts.*  AGT documented these wrongs in

27  paperwork filed with the ANAHEIM City Clerk in advance of the franchise hearing,

28  which has become a part of the Record and will be included in the Administrative Record.

1    Due to COVID-related restrictions and the regulations governing City Council hearings

2    that arose from same, the parties, including AGT's principal KONSTANTINOS

3    RODITIS, were only allowed to attend the franchise hearings "virtually." Further, per

4    SANDRA SAGERT's direction, KONSTANTINOS RODITIS was not allowed to make

5    an oral presentation, but only to respond to questions posed by the ANAHEIM

6    RESPONDENTS, such that his oral presentation was limited.

7

8          18.  AGT alleges that in their conduct of the subject RFP proceedings, for

9    all of the reasons above and as alleged hereinbelow, the ANAHEIM RESPONDENTS

10   proceeded without, or in excess of, jurisdiction.

11

12         19.  AGT further alleges that in their conduct of the above-described RFP

13   proceedings, the ANAHEIM RESPONDENTS did not conduct or allow for, or preside

14   over, a fair trial.  In addition to the procedural unfairness and impropriety alleged

15   hereinabove and throughout this Petition/Complaint, the ANAHEIM RESPONDENTS

16   did not fairly evaluate or review AGT's RFP Application, and did not score it accurately

17   or with respect to the actual facts and evidence, especially in comparison to their

18   evaluation and review of the competing CABCO RFP Application.  On the other hand the

19   ANAHEIM RESPONDENTS unfairly evaluated CABCO's RFP Application in

20   comparison to AGT's, and made many mistakes and errors in judgment.  The ANAHEIM

21   RESPONDENTS, while considering and scoring CABCO'S RPF Application, failed to

22   either utterly disqualify or to at least mark against and downgrade the same, on the

23   grounds that CABCO was then and there already in violation and breach of its existing

24   ANAHEIM taxicab franchise, in that it was operating its "vacated" 25 AWYC taxicab

25   permits; CABCO was also then using YELLOW CAB's ANAHEIM taxicab franchises

26   without authorization, and using YELLOW CAB's Anaheim franchise-stickered or

27   designated taxicabs, without having had them lawfully transferred to CABCO.  Despite

28   this, the ANAHEIM RESPONDENTS gave CABCO a much higher score on its RFP

1   Application, as justification for their decision to award CABCO a large enough

2   percentage of the franchise stickers to allow it to operate a taxicab monopoly.

3

4           20.  In addition, in their conduct of the RFP the ANAHEIM

5   RESPONDENTS prejudicially abused their discretion, in, without limitation, and over

6   AGT's written Objection and documented explanation about why a short ramp-up period

7   for the RFP, followed by an early termination date, was not feasible, nonetheless failing

8   to consider the economics and reality of the situation or to make reasonable

9   accommodations, and instead limiting the normal ten-year franchise period, to one of less

10  than two years, a limitation never made by the COA in the COA ORDER.  AGT alleges

11  that this is another reason that the ANAHEIM RESPONDENTS commingled and mixed

12  the RFP for "those 50 taxicab permits" in with the RFP for those that later became

13  available when YELLOW CAB went out of business in or about May 2020:  this way the

14  ANAHEIM RESPONDENTS could impose a premature termination date of the RFP

15  required under the COA ORDER, to make it match that of the remaining time left on the

16  YELLOW CAB 2012 franchise.  These acts disproportionately harmed AGT, since it was

17  not already operating in ANAHEIM, and had far less of an impact, if any, on CABCO,

18  which had already been operating in ANAHEIM for over ten years with up to 75 or more

19  taxicabs at any given time.  Thus in their conduct of the RFP the ANAHEIM

20  RESPONDENTS did not proceed in a manner required by law, the franchise awards were

21  not supported by law, the franchise awards were not supported by the findings, and the

22  findings as to why AGT should only be awarded 50 franchise permits when it asked for

23  100, yet CABCO should net a total of 205 franchise permits, were not supported by the

24  evidence.

25

26          21.  AGT maintains that in light of the facts alleged herein and the

27  constitutional violations of the ANAHEIM RESPONDENTS and ANAHEIM

28  DEFENDANTS alleged hereinbelow, as to the analysis of whether their findings that

1  were not supported by evidence, the appropriate standard of review is by independent

2  judgment. AGT alleges that the independent judgment standard applies since AGT had

3  special standing by means of the favorable COA ORDER, due to the ANAHEIM

4  RESPONDENTS' Constitutional violations, and/or as otherwise established or to be

5  established in this proceeding.  On these bases AGT hereby respectfully requests the

6  issuance of a WRIT OF ADMINISTRATIVE MANDATE, directing the issuance of the

7  balance of the 100 franchise permits requested, plus damages and other relief.

8

9          22.  AGT requests an award of attorney's fees and costs pursuant to *C.C.P.*

10  section 1095, pursuant to 42 *U.S.C.* section 1988 as alleged hereinbelow, and as otherwise

11  available at law or equity.

12

13                      SECOND CAUSE OF ACTION

14      FOR ISSUANCE OF A TRADITIONAL OR OTHER WRIT OF MANDATE,

15                      AS AGAINST ALL RESPONDENTS.

16

17          23.  AGT repeats and realleges each allegations of the COMMON FACTS

18  and the FIRST CAUSE OF ACTION as though set forth at length hereat.

19

20          24.  AGT maintains that in doing all of the acts and omissions alleged

21  hereinabove, the ANAHEIM RESPONDENTS failed to legally and properly apply

22  relevant portions of the *AMC,* including but not limited to *AMC* 4.73.050; and also that

23  the ANAHEIM RESPONDENTS complied (if they complied at all) with the COA

24  ORDER, in an unreasonable, arbitrary, and capricious manner, and in violation of *C.C.P.*

25  sections 1085 through 1088, with the direct result that AGT has been treated unfairly as

26  alleged throughout this Petition/Complaint, and is thus entitled an Order compelling the

27  ANAHEIM RESPONDENTS' performance by the issuance of a Traditional Writ of

28  Mandate under *C.C.P.* section 1088, or other Writ.

1    25.  AGT lacks a plain, speedy, and adequate remedy at law.

2

3    26.  AGT seeks the issuance of a Traditional Writ of Mandate or other

4   available Writ in order to direct the ANAHEIM RESPONDENTS to issue AGT the

5   remaining 50 taxicab franchise permits to which it was entitled, or to show cause before

6   the Court as to why it has not done so, and for attorney's fees and other relief under

7   *C.C.P.* section 1095 and 42 *U.S.C.* section 1988.

8

9    THIRD CAUSE OF ACTION

10    FOR DECLARATORY RELIEF FOR UNCONSTITUTIONAL

11    APPLICATION OF ORDINANCES

12    AS AGAINST ALL RESPONDENTS/DEFENDANTS.

13

14    27.  AGT repeats and realleges each allegations of the COMMON FACTS

15   and the FIRST and SECOND CAUSES OF ACTION as though set forth at length hereat.

16

17    28.  In doing all of the acts and omissions alleged herein, the ANAHEIM

18   RESPONDENTS and the ANAHEIM DEFENDANTS proceeded without or in excess of

19   ANAHEIM's jurisdiction, because the only authority that it had to act, was pursuant to

20   the *U.S. Constitution* and the *California Constitution*, the relevant provisions of which

21   were ostensibly correctly incorporated into the ANAHEIM CHARTER and correctly

22   enacted into the *AMC*.  As alleged herein, in particular but without limitation,

23   ANAHEIM acted unconstitutionally because it violated its own *AMC* sections 4.73.050,

24   4.73.045.020, and 4.73.045.030(iii), from which the ANAHEIM RESPONDENTS' and

25   the ANAHEIM DEFENDANTS' power to act and adjudicate arose.  The ANAHEIM

26   RESPONDENTS and the ANAHEIM DEFENDANTS further directly violated the *U.S.*

27   *Constitution*, which guarantees certain rights and privileges to AGT that were infringed

28   upon by means of the 2020 ANAHEIM taxicab RFP process.  These included without

1  limitation the *Fifth Amendment* protections of due process and equal protection, and the

2  *Fourteenth Amendment's* protection of procedural and substantive due process.

3

4       29. An actual controversy has arisen and now exists by and between AGT,

5  on the one hand, and the ANAHEIM RESPONDENTS, on the other hand, in that AGT

6  contends that the ANAHEIM RESPONDENTS and ANAHEIM DEFENDANTS have

7  engaged in ongoing acts and omissions that have violated the rights of AGT and its

8  principals guaranteed to them under the *U.S. Constitution,* including but not limited to

9  those promised under the equal protection clause and the due process clause of the *Fifth*

10  *Amendment*, and the due process clause of the *Fourteenth Amendment*; yet the

11  ANAHEIM RESPONDENTS deny such contentions.

12

13       30. AGT lacks a speedy and adequate remedy at law for this matter, and

14  respectfully requests a declaratory judgment determining that the ANAHEIM

15  RESPONDENTS violated AGT's constitutional rights in the manner in which they

16  advanced, administered, considered, graded, and awarded the ANAHEIM taxicab

17  franchises in the Summer of 2020, and that such violations harmed AGT. AGT also seeks

18  an award of damages based upon such violation and an award or attorney's fees and costs,

19  and other relief, in a manner and an amount according to proof.

20

21  FOURTH CAUSE OF ACTION

22  FOR VIOLATION OF FEDERAL CIVIL RIGHTS

23  UNDER 42 *U.S.C.* SECTIONS 1983 *et seq.*

24  AS AGAINST ALL DEFENDANTS.

25

26       31. AGT repeats and realleges each allegations of the COMMON FACTS

27  and the FIRST, SECOND, and THIRD CAUSES OF ACTION as though set forth at

28  length hereat.

32.  The history of the ANAHEIM's (and later, the ANAHEIM RESPONDENTS') bias and prejudice against AGT and family members of its principals, is long and tortured.  It began decades ago with ANAHEIM's mistreatment of an Orange County taxicab company that began operating in the early 1990's, and that was owned and managed by naturalized Greek immigrants IRENE and SAVVAS RODITIS, the parents of AGT's principal KONSTANTINOS RODITIS, and was known as "SOUTH COAST CAB CO., INC." ("SCC.")

33.  Prior to the approximate year 1997 each city in Orange County California had its own taxicab licensing rules and regulations.  This was pursuant to *Cal. Govt Code* section 53075.5 (adopted 1995 and later amended,) which addressed the duty of cities and/or counties to regulate their own taxicab operations.  ANAHEIM had enacted Chapter 4.72 of the *AMC* and had used those provisions to determine which taxicab companies would be allowed to operate in ANAHEIM, and which would not.  Chapter 4.72 mandated a "permit system" for taxicab operators and set up a licensing dichotomy.  Chapter 4.72 provided that taxicab companies already allowed to operate in ANAHEIM could continue to so operate without any termination date, and to simply informally request additional permits from the Chief of Police and the "Code Enforcement Manager" if they wanted to increase the number of those permits, while "newcomer" taxicab companies applying for an ANAHEIM taxicab permit would have to prove both that the "public convenience and necessity" required the operation of *their* taxicabs in ANAHEIM, *and* that the newcomer company had a sufficient fleet to "allow them to service the entire City" (which "sufficient fleet" was pegged in ANAHEIM City Council proceedings at being a fleet of 50 or more taxicabs.)  Further, a newcomer taxicab applicant for permits had to go before the ANAHEIM City Council in public hearings to convince and obtain the vote of a majority of the City Councilpersons, over the strenuous objections of the existing ANAHEIM taxicab permit operators, that such newcomer should receive ANAHEIM taxicab permits.

34.  SCC was a California-licensed taxicab company based in the City of Anaheim or its environs.  SCC or its predecessor operated from approximately 1991 through about 2005, when due in large part to unfair acts of ANAHEIM as explained hereinbelow and in the Related Case, it was forced out of business.  AGT began operating in or about 2005 as a sort of successor company to SCC.

35.  Since at least 1989 ANAHEIM had not given taxicab operating permits to any taxicab company other than the "duopoly" companies of YELLOW CAB and AWYC.[1]  Beginning in about 1991 and continuing through at least the year 2001, SCC began trying to obtain a taxicab operating permit from ANAHEIM.  ANAHEIM repeatedly denied SCC's sequential Applications for a taxicab operating permit under questionable terms, ultimately leading SCC to initiate legal action.  By its (unpublished but widely-disseminated) December 19, 2000 Opinion in appellate case #G026197, the Fourth District COA, Division Three, struck down ANAHEIM's taxicab permit laws as unconstitutionally void, and directed that SCC be granted 117 ANAHEIM permits.  SCC was thus able to operate taxicabs in ANAHEIM for a season.

36.  AGT is informed and believes and based thereon alleges that while SCC's litigation was ongoing, in or about 1997 ANAHEIM and others founded "OCTAP," the Orange County Taxicab Administration Program; and OCTAP was purportedly set up in order to best comply with the then-current version of *Cal. Gov't Code* section 53075.5 and to have all of the "member cities" of Orange County comply with a single regulatory agency (rather than having to comply with each city's particular taxicab regulations.)  In or about 1998 ANAHEIM transferred its taxicab authority to OCTAP pursuant to Anaheim Resolution 98R-31.

---

[1]  which had previously operated under a different name.

37.  AGT is informed and believes and based thereon alleges that while SCC's litigation was ongoing and also during the period that SCC was allowed to operate part of its taxicab fleet in ANAHEIM pursuant to Court Order, and for the purposes of undermining the Court Order and disabling SCC from operating taxicabs in ANAHEIM, ANAHEIM converted its taxicab permit system of operations to a "franchise" system.   In order to convert its taxicab operating system in this way, ANAHEIM adopted Article XIV, sections 1400 through 1406 to its CHARTER, and it added Chapter 4.73 to the *AMC*.  In relevant part but without limitation, *AMC* Chapter 4.73.045.010 allowed ANAHEIM to award an aggregate of 230 taxicab stickers (plus a 15% overage.)  *AMC* Chapter 4.73 effectively superseded Chapter 4.72 and remained in effect as the governing "law" that ANAHEIM set up for itself to award taxicab franchises and to regulate taxicab operations under it, and as required under all State and Federal laws.

38.  ANAHEIM first tried to initiate its taxicab franchise operations in the year 2001.  ANAHEIM Code Enforcement Staff ("Staff") adopted the "RECOMMENDATION" of the special taxicab consultant expert it had hired, that there should be at least three separate taxicab franchises awarded.  Staff thus recommended that ANAHEIM award one franchise to YELLOW CAB for 130 stickers, another to A TAXI for 50 stickers, and the third to new company AMERICAN LIVERY, INC. dba AMERICAN TAXI, also for 50 stickers.  This would "use up" all 230 authorized franchise stickers.  The next runner-up applicant was CABCO, which Staff "recommended" should not receive a single franchise sticker at that time.

39.  On April 10, 2001 while the ANAHEIM taxicab franchise public hearings were ongoing, AMERICAN TAXI filed for relief under Chapter 11 of the Bankruptcy Code as Case #SA01-12955-JR. As required by law ANAHEIM did not change its Recommendation for the taxicab franchise awards while AMERICAN TAXI

1    remained in bankruptcy, until it became clear in or about late November 2001 that

2    AMERICAN TAXI would be losing its fleet. At that point since the third company was

3    going out of business, rather than splitting up AMERICAN TAXI's designated 50

4    stickers among the two recommended companies YELLOW CAB and A TAXI,

5    ANAHEIM instead opted to give AMERICAN TAXI's 50 stickers to the fourth-ranked

6    applicant, CABCO. YELLOW CAB, AWYC, and CABCO all began operating under

7    ANAHEIM's first taxicab franchise on February 14, 2002, which franchise was for a

8    five-year period, with five one-year renewal options for each.

9

10        40.  Meanwhile, SCC was forced to file for relief under Chapter 7 of the

11   *U.S. Bankruptcy Code* in or about June 2006 after it lost the last of its ANAHEIM taxicab

12   permits effectively issued by the Court. In awarding SCC nearly $100,000 in pre-

13   judgment interest on its jury verdict award against ANAHEIM based upon ANAHEIM's

14   violation of its rights, the Honorable David O. Carter found that "...Anaheim's intentional

15   wrongful acts, including its improper denial of SCC's permit, ultimately caused the

16   demise of SCC." (January 22, 2007 Order in case #SA CV 99-0416(DOC)(ANx).)

17

18        41.  AGT began operating in or about late 2005 as a sort of successor

19   company to SCC. The President and C.E.O. of AGT is KONSTANTINOS RODITIS, the

20   natural son of SCC's owners SAVVAS and IRENE RODITIS; AGT is informed and

21   believes and based thereon alleges, that the ANAHEIM DEFENDANTS and other

22   ANAHEIM personnel involved in its taxicab licensing and regulatory matters are well

23   aware of this relationship. AGT is informed and believes and based thereon alleges that

24   at all times hereinmentioned throughout this Petition/Complaint ANAHEIM was biased

25   and prejudiced against SCC and went to great lengths to prevent it from operating in

26   ANAHEIM, and that since its formation, ANAHEIM has been likewise prejudiced and

27   biased against AGT, and remains so; it has gone to great lengths to prevent it from

28

operating in ANAHEIM as well. AGT alleges that ANAHEIM and the ANAHEIM DEFENDANTS (and/or certain key personnel relevant to this action) and racially biased against SCC's and AGT's Greek owners. As referenced in the COA Opinion in Case #G026197, when SAVVAS RODITIS first approached one of ANAHEIM's Code Enforcement Officers inquiring about securing a taxicab operating permit, the Officer told SAVVAS RODITIS that he should go back to Greece; that he would never get a permit to operate "in this City." To date, the latter statement has proven to have been prophetic: with the exception of the approximate five-year period that SCC was allowed to offer taxicab service in ANAHEIM only because SCC was protected by the COA Order, ANAHEIM never willingly allowed SCC to operate. In fact, up until the past few months, ANAHEIM had prevented AGT from operating in ANAHEIM as well. [As alleged hereinabove, the ANAHEIM DEFENDANTS only very recently allowed AGT to receive a 50-permit award (the minimum number allowed under the ANAHEIM franchise ordinance) because they were aware that their actions were under the scrutiny of the OCSC and that they would not escape legal repercussions if they denied AGT any franchise permits; they also knew that if they diluted the number of permits awarded to AGT by means of their manipulations as alleged hereinabove, they could still preserve the taxicab monopoly now enjoyed by CABCO.

42. The extensions that were available to the three taxicab companies that had been awarded ANAHEIM taxicab franchises and had commenced operating thereunder on February 14, 2002, were of a "rolling" nature, requiring the franchisee to request a one-year extension after the conclusion of *each* year of the five year (2002-2007) base term. AGT is informed and believes and based thereon alleges that because this was an unusual procedure, none of the three franchisees actually requested all of their one-year extensions on time, and that the last franchisee to "catch on" was AWYC, which did not request an extension for three years. Thus AWYC's franchise was

1   effectively limited to seven years (a five-year base term and two, one-year timely-
2   exercised options) and was set to expire on February 14, 2009. Thus, in or about late
3   2008 ANAHEIM issued and circulated a new RFP seeking bids for AWYC's 50 franchise
4   stickers that would become available on that date. Four taxicab companies submitted
5   Responses to the 2008 RFP - YELLOW CAB, CABCO, AWYC, and AGT.
6
7          43. The hearing on the 2008 taxicab RFP and franchise awards took place
8   on or about February 24, 2009. Ultimately ANAHEIM chose to award the same 50
9   franchise stickers back to AWYC; with YELLOW CAB retaining its same 130 franchise
10  stickers and CABCO retaining its same 50 franchise stickers. AGT was not awarded a
11  single franchise sticker. At or about the same time ANAHEIM passed a Resolution
12  continuing all three of the incumbents' franchise Ordinances to the same day - February
13  14, 2012 - so that they would all expire on that same date, to be subject to a new RFP
14  process at the same time (presumably along with any other taxicab franchise newcomer-
15  applicants such as AGT.) At that time, ANAHEIM also awarded YELLOW CAB *an*
16  *additional* 25 franchise stickers, without having issued any RFP for these and without
17  having gone through any public bidding process pertaining to their issuance or award.
18
19         44. ANAHEIM acted in excess of its jurisdiction and against law, and its
20  act in increasing the number of franchise stickers to 255 so that it could give 25 more to
21  YELLOW CAB was void, without the conduct of an entirely new RFP under *AMC*
22  4.73.050 for those additional stickers, and also because *AMC* section 4.73.045.010
23  authorized the issuance of only an aggregate of 230 taxicab franchise stickers. Also, the
24  fact that ANAHEIM gave YELLOW CAB 25 *more* stickers when it already had 130 of
25  them, and failed and refused to give AGT a single franchise sticker, is further evidence of
26  ANAHEIM's arbitrary and capricious treatment of AGT and its bias against AGT and its
27  Greek owner and members of the RODITIS family.
28

45.  In or about February 2012 ANAHEIM issued a new RFP for the award of taxicab franchises, and the bidding, evaluation, and award process of the franchises thereunder was the subject of AGT's challenge in its First Amended Complaint before the Trial Court in the pre-appellate proceedings in the Related Case.  Without limiting the generality of that allegation, ANAHEIM's made the first award of the taxicab franchises pursuant to that RFP on about May 8, 2012.  However, CABCO thereafter submitted a REQUEST FOR REHEARING to ANAHEIM.  Although CABCO's REQUEST FOR REHEARING of the taxicab franchise awards (in particular attacking the award to AWYC) was submitted late and was procedurally invalid, ANAHEIM nonetheless granted it.  On or about August 21, 2012 ANAHEIM held the REHEARING requested by CABCO, and re-awarded the same allotment of taxicab franchise stickers to YELLOW CAB, AWYC, and CABCO.  ANAHEIM did not award any franchise stickers to AGT.  In early September 2012 24/7 AGT timely submitted a procedurally-correct REQUEST FOR REHEARING from the awards at the August 21, 2012 hearing, which ANAHEIM later summarily denied.

46.  Shortly after the three new taxicab franchise Ordinances were adopted by ANAHEIM in 2012, ANAHEIM began proceedings to terminate AWYC's franchise on the grounds that it had not submitted the appropriate "audited financial statements" allegedly required by the RFP.  Administrative hearings with a full presentation of oral testimony and documentary evidence took place on ANAHEIM's challenge throughout the Summer of 2013.  In September 2013 the specially-appointed Hearing Officer determined that ANAHEIM had not met its burden of proof and that AWYC had by then submitted all of the financial documentation allegedly required under the RFP.  The Hearing Officer also found that YELLOW CAB had itself not submitted the appropriate number of years' worth of audited financial statements (and the years' worth that were submitted, had not been properly audited) as required under the RFP.  However,

1  ANAHEIM never took any actions whatsoever to terminate YELLOW CAB's franchise

2  based upon its failure to comply with the RFP and its own franchise ordinance; nor, on

3  information and belief, did ANAHEIM ever do anything to ensure that YELLOW CAB

4  complied with the requirements of the RFP and the franchise.

6  47. ANAHEIM is a person within the meaning of 42 *U.S.C.* section 1983 *et*

7  *seq.*, as are all of the other named Respondents/Defendants herein.

9  48. At all times hereinmentioned, in doing all of the acts and omissions

10 alleged herein, the ANAHEIM RESPONDENTS and the ANAHEIM DEFENDANTS,

11 and DOES 1 through 50, Inclusive, were acting under color of law (in the form of the

12 *AMC*, the ANAHEIM CHARTER, ANAHEIM REGULATIONS, and ANAHEIM

13 ORDINANCES; by the *Constitution of the State of California* from which ANAHEIM

14 derived its power and authority; and under the aegis of California State statutes, including

15 without limitation *Cal. Govt. Code* sections 53075.5 and its amendments,) which power

16 and authority was extended to and used and wielded by ANAHEIM through its agents,

17 officers, managers, and employees, including but not limited to the ANAHEIM Mayor,

18 Mayor *Pro Tem,* City Councilpersons, and City Managers and Staff.

20 49. At all times hereinmentioned, as a direct and proximate result of their

21 acts and omissions carried out under color of law, the ANAHEIM RESPONDENTS and

22 the ANAHEIM DEFENDANTS, and DOES 1 through 50, Inclusive, subjected, or caused

23 to be subjected, AGT and its principals, citizens of the United States or other persons

24 within the jurisdiction thereof, to be deprived of their rights, privileges, or immunities

25 secured by the *U.S. Constitution,* the *California Constitution,* and other laws, as alleged

26 throughout this Petition/Complaint, all to AGT's and its principals' damage in a manner

27 and in an amount according to proof.

50.  AGT claims entitlement to its attorney's fees and costs in this and the Related Case pursuant to 42 *U.S.C.* section 1988.

WHEREFORE AGT PRAYS FOR RELIEF AS FOLLOWS:

1.  For the issuance of a Writ of Administrative Mandamus, on the grounds that the ANAHEIM RESPONDENTS proceeded without or in excess of its jurisdiction in their acts and omissions pertaining to the issuance, evaluation, conduct, and award of the RFP proceedings of the Summer and Fall of 2020; that the RFP process was not "fair," and/or that there was a prejudicial abuse of discretion, and for damages and fees as available under *C.C.P.* section 1095;

2.  For the issuance of a Traditional Writ of Mandate or other Writ, on the basis that the ANAHEIM RESPONDENTS' acts and omissions pertaining to the issuance, evaluation, conduct, and award of the RFP proceedings of the Summer and Fall of 2020 were arbitrary and capricious; and for damages and fees as available under *C.C.P.* section 1095;

3.  For a declaratory judgment, finding and declaring that the acts and omissions of the ANAHEIM RESPONDENTS and the ANAHEIM DEFENDANTS as alleged herein were unconstitutional, and entitling AGT to an award of damages and fees;

4.  For damages pursuant to 42 *U.S.C.* sections 1983 *et seq.,* and for attorney's fees and costs as available under 42 *U.S.C.* sections 1988, or as might otherwise be allowable, for the period from approximately August 21, 2012 through the present, to compensate for the money that AGT would have earned from operating up to 100 taxicabs in ANAHEIM from and since that time, as AGT would have done, but-for

1   ANAHEIM's wrongful, unlawful, and unconstitutional acts against AGT as alleged

2   herein, according to proof;

3

4           5  For reasonable costs of suit herein incurred; and

5

6           6  For such other and further relief as may be deemed fair and just.

7

8           AGT hereby demands a trial by jury on all legal claims, on the issue of

9   damages, and on all other matters as to which a trial by jury is allowed.

10

11                          RESPECTFULLY SUBMITTED,

12                          *CAZZELL & ASSOCIATES, ATTORNEYS*

13

14   DATED:   December 31, 2020          /S/ Maryann Cazzell

15                          By: _____

16                              MARYANN CAZZELL, ESQ.
                                Attorneys for Petitioner/Plaintiff
17                              AMERICAN GROUND
                                TRANSPORTATION, INC., etc.
18

19

20

21

22

23

24

25

26

27

28

1
2
3
## VERIFICATION

4
5
6
    I, KONSTANTINOS RODITIS, am the principal of AMERICAN GROUND TRANSPORTATION, INC., the Plaintiff in the above-entitled action.

7
8
9
    I have read the foregoing Petition / Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are alleged on information and belief, and as to those matters, I believe them to be true.

10
11
12
13
    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

14
15
DATED: Dec. 31, 2020

16
17
18
19
_____
KONSTANTINOS RODITIS

20
21
22
23
24
25
26
27
28